[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff seeks to vacate an arbitration award issued by the State Board of Mediation and Arbitration ("board") on November 19, 1999, and the defendant city seeks to confirm the award. The plaintiff is an employee organization as defined under General Statutes § 7-467 (6), and the defendant is a municipal employer as defined under General Statutes § 7-467 (1). For the following reasons, the court finds the issues in favor of the defendant.
On March 19, 1998, the plaintiff filled a grievance in accordance with its collective bargaining agreement with the city of Torrington, alleging that the city had violated the terms and conditions of the collective bargaining agreement in its calculation of pension benefits of one of the plaintiff's members, Captain Edward DeLisle. The grievance was denied at the lower steps and the dispute was submitted to the board pursuant to the collective bargaining agreement. The issue in dispute was the interpretation of the following language of the collective bargaining agreement:
 Article XXV
CT Page 12375
 Section 11(a): Any active member of the Fire Department having at least ten (10) years of service and having attained age 55, or, regardless of age, having twenty-five (25) completed years of service, shall upon written application be retired, with an annual pension, payable monthly from the pension fund that is equal in amount to two percent (2%) of the highest annual compensation that the member has receive during any year in the five (5) year period preceding retirement, multiplied by the number of completed years of service of such employee, plus an additional one percent (1%) for each completed six (6) months of service in excess of twenty-five (25) years. If any such employee shall die after he/she retires, pursuant to this section, the surviving spouse, if he/she then be unmarried, shall receive until his/her death, remarriage, or cohabitation with a member of the opposite sex, a sum equal to one-half (1/2) of the sum to which the retired employee would have received had he/she lived. If there is no surviving spouse or the spouse has remarried or is cohabiting with a member of the opposite sex, such benefit will be paid to the child or children of the retired employee until the age of eighteen (18) or the age of twenty-three (23) if the child or children are full time students. If there is more than one (1) child, the payment will be equally divided among them.
The issue that was submitted to the board read: "Did the city violate the terms and conditions of Article XXV of the pension agreement, specifically section 11, par. (a) regarding the grievant's retirement. If so what shall the remedy be?". (Application to Vacate Arbitration Award, Exhibit C.)
On April 30, 1999, the board held a hearing, and thereafter received briefs from each side. On November 19, 1999, the board issued its award with a dissenting opinion, deciding that the city did not violate the terms and conditions of Article XXV of the agreement and denying the grievance.
In this application, the plaintiff ultimately proceeds on three grounds for vacating the award.[1] First, it argues that the award results from the violation of a clearly established public policy because it is based on inapplicable evidence, namely the tentative agreement between the city CT Page 12376 and the police union rather than the firefighter union. Second, it claims that by using the negotiations between the police union and the city to interpret the firefighter union collective bargaining agreement, the arbitrators prejudiced the rights of the plaintiff. Third, it argues that the arbitrators imperfectly executed their powers by erroneously applying evidence of the police union agreement in reaching their decision.
The second two grounds rely on the statute guiding this court in its determination. Under General Statutes § 52-418, this court shall make an order vacating the award if it finds certain specified defects. The two cited by the plaintiff read,
 (a)(3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.
General Statutes § 52-418 (a)(3) and (4).
The court notes that its review of arbitration awards is even more restricted than its review of agency decisions under the Uniform Administrative Procedures Act (UAPA). Under the UAPA, the court is limited to an examination of "the record to determine whether the ultimate findings were supported . . . by substantial evidence."OG/O'Connell Joint Venture v. Chase Family Limited Partnership No. 3,203 Conn. 133, 155 (1987). Here, however, "[o]nly upon a showing of egregious error . . . does a court have authority to review the record to determine the sufficiency of the evidence in support of an arbitration award." Id. Under Article V of their collective bargaining agreement, the parties here have agreed to a voluntary and unrestricted submission to arbitration. (Attachment to Defendant's Memorandum in Opposition to Application to Vacate dated 07/31/01.)
Accordingly, this court must make "every reasonable presumption in favor if the arbitration award and the arbitrator's acts and proceedings." OG/O'Connell Joint Venture v. Chase Family LimitedPartnership No. 3, supra, 145. Further, "[t]he party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it, and only upon a showing that it "falls within the proscriptions of § 52-418 of the General Statutes, or procedurally violates the parties' agreement' will the determination of an arbitrator be subject to CT Page 12377 judicial inquiry." Id., 145-46.
Turning to the claim that the statutory defects are present, the court is persuaded that under OG/O'Connell Joint Venture v. Chase FamilyLimited Partnership No. 3, the plaintiff cannot prevail as to its claim under § 52-418 (a)(3). "To establish that an evidentiary ruling, or lack thereof, rises to the level of misconduct prohibited by § 52-418
(a)(3) requires more than a showing that an arbitrator committed an error of law." Id., 149. The plaintiff here cannot prove that the grievant was deprived of a full and fair hearing before the arbitration panel simply by showing that the arbitrators considered evidence of an agreement between the police union and the city. The arbitrators enjoy broad discretion in evidentiary matters, especially here in an unrestricted submission.
As to the defect claimed under § 52-418 (a)(4), the court is again guided by Supreme Court authority. In State v. AFSCME, AFL-CIO, Council4, Local 2663, 257 Conn. 80, 85-86 (2001), the court addressed a claim under this statutory provision and held,
 An application to vacate or correct an award should be granted where an arbitrator has exceeded his power. In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission. . . . A challenge of the arbitrator's authority is limited to a comparison of the award to the submission. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved.
(Citations omitted.) Again, a claim that the arbitrators considered and applied evidence of a similar agreement reached by the police union with the city does not sufficiently prove that the award of the arbitrators does not conform to the submission of the parties. Accordingly, the court does not find a defect under either of the statutory provisions.
The plaintiff also claims that this case falls under the public policy exception to the general rule of deference provided to an award pursuant to an unrestricted submission. The plaintiff argues that the use of the CT Page 12378 police union agreement in their determination rises to a violation of public policy. The Supreme Court has recently addressed this issue inSouth Windsor v. South Windsor Police Union Local 1480, Council 15,AFSCME, AFL-CIO, 255 Conn. 800 (2001).
 The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.
(Brackets in original; citations omitted; emphasis added; internal quotation marks omitted) Id., 815. The plaintiff here has provided no explicit public policy well defined and dominant that would apply to invalidate the award.
 The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the [arbitrators'] award clearly violates an established public policy mandate. . . . It bears emphasizing, moreover, that implicit in the stringent and narrow confines of this exception to the rule of deference to arbitrators' determinations, is the notion that the exception must not be interpreted so broadly as to CT Page 12379 swallow the rule.
(Brackets in original; citations omitted) Id., 816.
The public policy issue in South Windsor was the fitness for duty of the town's police force; the Supreme Court found that that was not an explicit, well defined and dominant public policy and reversed the Appellate Court's and trial court's granting of the application to vacate. The facts here are not as compelling: the claimed use of inapplicable evidence. Thus, the case law compels this court to reject the public policy argument to invalidate this award.
The plaintiff's application to vacate is denied; the defendant's application to confirm the award is granted.
DiPentima, J.